IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TIFFANY FRANCES GUTIERREZ,

      Plaintiff,

vs.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

      Defendant.

No. 2:12-cv-698-EFB

ORDER

      Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for a period of disability and Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. The parties have filed cross-motions for summary judgment. For the reasons discussed below, the court grants defendant's motion for summary judgment and denies plaintiff's motion for summary judgment.

I.    BACKGROUND

      Plaintiff applied for a period of disability, DIB, and SSI benefits on December 10, 2008, alleging disability beginning January 1, 2007. Administrative Record ("AR") 57-58. Plaintiff's applications were initially denied on May 11, 2009, and again upon reconsideration on June 24,

2009. *Id.* at 64-68, 72-76. On July 8, 2010, a hearing was held before administrative law judge ("ALJ") Timothy S. Snelling. *Id.* at 32-56. Plaintiff was represented by counsel at the hearing, at which she and a third-party witness testified. *Id.*

In a decision dated August 26, 2010, the ALJ determined that plaintiff was not disabled under 216(I), 223(d), and 1614(a)(3)(A) of the act.[1] AR 15-26. The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2009.
>
> 2. The claimant has not engaged in substantial gainful activity since January 1, 2007, the alleged onset date (20 CFR 404.1517 *et seq.*, and 416.971 *et seq.*).

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq.* Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq.* Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. *See* 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Bowen*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

2

\* \* \*

3. The claimant has the following medically severe combination of impairments: bipolar disorder, borderline intellectual functioning, anxiety disorder, obesity and history of polysubstance abuse/dependence in sustained remission (20 CFR 404.1520(c) and 416.920(c)).

\* \* \*

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926.

\* \* \*

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform work at all exertional levels, but can have no more than frequent contact and interaction with coworkers and supervisors, no more than occasional contact and interaction with the general public, and cannot perform work requiring the ability to understand, remember, and/or carry out detailed or complex job instruction/tasks or complex and detailed work in general.

\* \* \*

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

\* \* \*

7. The claimant was born June 21, 1983 and was 23 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

\* \* \*

/////

/////

>11. The claimant has not been under a disability, as defined in the Social Security Act, since January 1, 2007, the date the application was filed.

AR 17-25.

Plaintiff requested the Appeals Council review the ALJ's decision. *Id.* at 9-10. However, on February 7, 2012, the Appeals Council denied review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. *Id.* at 1-5.

## II.   LEGAL STANDARD

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "It means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

## III.   ANALYSIS

Plaintiff argues that (1) the ALJ erred by failing to provide legally sufficient reasons for rejecting the opinions of Dr. Wakefield and Dr. White, (2) the ALJ erred by selectively rejecting

portions of the non-examining physicians' opinions without explanation, and (3) the Appeals Council erred by failing to remand the matter for further proceedings based on new and material evidence submitted subsequent to the ALJ's decision. Pl.'s Mot. for Summ. J., ECF No. 18.

### A. The ALJ failed to articulate specific and legitimate reasons for rejecting portions of Drs. Wakefield and White's opinions

Plaintiff first claims that the ALJ erred by failing to articulate specific and legitimate reasons for rejecting portions of Drs. Wakefield and White's opinions. ECF No. 16-1 at 12-16.[2] The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). Here, the doctors in question--Drs. Wakefield and White--were examining, not treating doctors.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons.[3] *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence. *Id*. at 830.

---

[2] For ease of reference, all citations to pages numbers reference the pages numbers assigned by the court's case management and electronic case file (CM/ECF) system.

[3] While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). However, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

5

1     The record contains medical opinions from two examining sources and two non-
2 examining sources. James A. Wakefield, Ph.D., licensed clinical psychologist, examined
3 plaintiff on April 29, 2009.[4] AR at 291-296. He found that plaintiff "exhibited functional usage
4 of memory," but that her overall memory skills were in the borderline range. *Id*. at 293.
5 Plaintiff's intellectual abilities were low-average to below average, she had less than average
6 nonverbal reasoning and problem solving, and she had an IQ level of 79, placing her intellectual
7 functioning in the boarding line. *Id*. Dr. Wakefield diagnosed plaintiff with bipolar disorder and
8 borderline intellectual functioning. *Id*. at 295. He opined that plaintiff could function
9 adequately when not in situations where she is experiencing stress, but that she lacked the ability
10 to manage her own benefit payments. *Id*. at 296.

11     On June 28, 2010, plaintiff was evaluated by Dr. White, a board certified psychiatrist. *Id*.
12 at 369-79. Dr. White reviewed plaintiff's medical records from Mental Health Services of San
13 Joaquin County from 2005 through 2010, records from her primary care provider, and the
14 psychological evaluation completed by Dr. Wakefield. She found that plaintiff "presented as an
15 obese, withdrawn, depressed young woman who was emotionally flat throughout the interview."
16 *Id.* at 371. Plaintiff "described symptoms of anhedonia, low energy level, low self-esteem, little
17 self-confidence, [and] limited initiative and drive." *Id.* Furthermore, plaintiff is "frequently
18 irritable, [she] broods about the past, feels pessimistic about her future, and often feels helpless
19 and hopeless." *Id.* Dr. White found that plaintiff often considers harming herself and
20 committing suicide. *Id.* Dr. White found no evidence of florid psychosis and further opined
21 that plaintiff "is academically retarded and functions intellectually in the borderline range with a
22 full scale IQ of 79." *Id*.

23     Dr. White diagnosed plaintiff with bipolar disorder, severe; mixed type personality
24 disorder with predominant borderline, dependent and avoidant traits, severe; and borderline

---

[4] At this examination, plaintiff was also examined by Robert L. Mattesich, Licensed Educational Psychologist.

6

intellectual functioning. *Id.* She opined that plaintiff was moderately limited in her ability to remember and carry out detailed instructions, but only mildly limited in her ability to understand, remember and carry out short and simple repetitive instructions. *Id*. at 373-72. It was her opinion that plaintiff had marked limitations in maintaining attention and concentration for extended periods, in completing a normal workday and workweek without interruption from psychologically based symptoms, and in performing at a consistent pace without an unerasable number and length of rest periods. Dr. White further opined that plaintiff was moderately limited in her ability to perform activities in a schedule, in maintaining attendance and being punctual within customary tolerance, in maintaining an ordinary routine without special supervision, and in her ability to interact with coworkers and accept instructions from supervisors. *Id*. at 374-75.

The record also contains the opinions of Drs. Amado and Williams, both non-examining physicians. On May 1, 2009, based on a review of plaintiff's medical records, Dr. Amado opined that plaintiff was moderately limited in activities of daily living; social functioning; and concentration, persistence, and pace. AR at 297. Dr. Amado opined that plaintiff could perform unskilled/nonpublic medium work and seemed "to require repetition and visual demonstration of simple instructions but once learned would appear quite capable of performing tasks at least at this basic level." *Id.* Dr. Amado also opined that plaintiff "seems to misinterpret social cues, becoming angry or alienating others, and she does poorly under high stress." *Id.* Dr. Williams completed a case analysis on June 24, 2009, in which he confirmed Dr. Amardo's opinion. *Id.* at 329-30.

        1.    <u>Dr. Wakefield</u>

Plaintiff first argues the ALJ failed to credit Dr. Wakefield's opinion that plaintiff (1) is capable of functioning adequately when not experiencing stress and (2) is not capable of managing her own funds. ECF No. 16-1 at 13-14. Therefore, plaintiff contends the "ALJ did not articulate specific reasons for not crediting . . . the opinion as far as the difficulty

7

experiencing stress and difficulty handling money." *Id.* at 14.  The ALJ gave some weight to Dr. Wakefield's opinion "to the extent that it is consistent with the record as a whole."  AR 23. After providing a summary of Dr. Wakefield's findings and opinion, the ALJ stated that "the record as discussed above shows that the claimant is less limited than stated in this opinion."  *Id.*

A conclusory reason, without further elaboration, cannot constitute a specific and legitimate reason for rejecting an examining doctor's opinion.  An ALJ may satisfy his burden of providing specific and legitimate reasons for rejecting a contradicted medical opinion "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Embrey v. Bowen*, 849 F.2d 418, 421 (1988).  As explained by the Ninth Circuit:

> To say that medical opinions are not supported by sufficient objective findings does not achieve the level of specificity our prior cases have required even when the objective factors are listed seriatim.  The ALJ must do more than offer his own conclusions. He must set forth his own interpretation and explain why he, rather than the doctors, are correct.

*Regenniter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299 (9th Cir. 1999).

While the ALJ's decision contains a summary of the relevant evidence, the written decision does not identify contradictory evidence or explain how Dr. Wakefield's opinion is inconsistent with the record.  Rather, following a summary of the evidence and, without further explanation, the decision concludes that plaintiff is less limited than stated in Dr. Wakefield's opinion.  While this reasoning does not achieve the level of specificity required by the law of this circuit requires, *see Embrey*, 849 F.2d 418 (1988); *Regenniter*, 166 F.3d at 1299, the error appears to be harmless.  *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (the relevant inquiry "is whether the ALJ's decision remains legally valid, despite such error.").  Even if the entirety of Dr. Wakefield's opinion is accepted, plaintiff is nonetheless capable of functioning adequately when not experiencing stress, albeit with the further limitation of not being capable of managing her funds.  Dr. Wakefield assigned a GAF score of 75,

8

representing transient symptoms or slight impairments that are considered normal reactions to stressors. While that score is not, itself controlling, Dr. Wakefield opined that plaintiff "appears to have adequate adaptive behavior skills" and is the primary care provider for two children and reportedly performs typical household chores. AR 296. He further opined that plaintiff exhibited adequate ability to formulate visual-motor movements, adequately performed a task involving a one-step directive with simple sequential reasoning and rapid visuo-spatial search. *Id.* Thus, even if the limitations noted by Dr. Wakefield's opinion are fully credited, they do not materially undermine the RFC found by the ALJ.

### 2. Dr. White

Plaintiff argues that the ALJ also failed to provide specific and legitimate reasons for rejecting Dr. White's opinion. The ALJ provided the following discussion concerning Dr. White's medical opinion:

> Dr. White did not give the claimant any independent cognitive functioning tests but appeared to use the information from . . . [Dr.] Wakefield's report, and opined that the claimant was "academically retarded and functions intellectually in the borderline range with a full-scale IQ of 79" (Id.). In fact, Dr. White's report does not show that she provided any objective medical tests and indicates that she relied heavily on the claimant's subjective statements (Exhibit 14F). Dr. White also opined that the claimant's symptoms of bipolar disorder "have been poorly controlled so far despite the many psychotropic medications that she has tried so far" (Exhibit 14F/3)  This opinion contradicts the findings in the claimant's progress notes as discussed above, which shows that her condition has stabilized. Moreover, the claimant's mother also testified that the claimant's medication has helped control her mania.

AR 22.

Thus, the ALJ rejected Dr. White's opinion because (1) she relied on studies conducted by another doctor, (2) she relied heavily on plaintiff's subjective statement, and (3) her opinion that plaintiff's symptoms are poorly controlled with medication is contradicted by other evidence in the record.

As a threshold matter, Dr. White's reliance on studies conducted by another doctor is not itself a sufficient basis for rejecting Dr. White's opinion. However, although the ALJ criticizes

9

Dr. White's use of results from cognitive functioning tests administered by Dr. Wakefield, that is not the sole basis for not crediting Dr. White's opinion. The ALJ found that the opinion was "based on her one-time evaluation . . . that [is] inconsistent with the claimant's treatment records. . . ." AR 22. It is important to note that while Dr. White relied on the tests conducted by an examining doctor, Dr. White reached conclusion that differed significantly from those of Dr. Wakefield who actually examined plaintiff and administered the tests. Under these circumstances, it was not error for the ALJ to accept the opinion of the examining doctor over that of a non-examining doctor who reached a different opinion based on the same test results. The ALJ further noted that Dr. White's conclusion contradicts the treating progress notations that plaintiff's condition had stabilized. AR 22..

The ALJ also rejected Dr. White's opinion because it was based heavily on plaintiff's subjective complaints. "An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999)). However, "an ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the [claimant's] complaints where the [examining physician] does not discredit those complaints and supports his ultimate opinion with his own observations." *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194 (9th Cir.2008).

Here, Dr. White did not examine the plaintiff. Dr. Wakefield did, and reached a very different conclusion than Dr. White. While both Dr. White and Dr. Wakefield provided detailed summaries of plaintiff's medical records, it was ultimately the province of the ALJ to determine which opinion to credit. The opinion of Dr. White notwithstanding, Dr. Wakefield's findings contain substantial evidence to support the ALJ's RFC determination.

Finally, in rejecting Dr. White's opinion the ALJ found no support in the record for her statement that plaintiff's bipolar disorder has been poorly controlled. AR 22. The medical

10

records from 2007 and 2008 indicate that plaintiff's depression and bipolar disorder was not well controlled with medication. *See*, *e.g.*, AR 237, 244, 353. However, in November of 2009, plaintiff was noted to be stable with no side-effects. *Id.* at 342. Plaintiff was alert and oriented, pleasant and cooperative, and had a bright affect. *Id.* Plaintiff was seen again on February 11, 2010, and it was noted that her GAF had increased from 40 to 70 over the past year, and that plaintiff had been clean and sober for more than a year. *Id.* at 340. This evidence supports the ALJ's finding that plaintiff's condition was eventually stabilized upon receiving proper medication.

IV. CONCLUSION[5]

The ALJ's decision is supported by substantial evidence in the record. Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment is denied;

2. The Commissioner's cross-motion for summary judgment is granted; and

3. The Clerk is directed to enter judgment in defendant's favor.

DATED: September 30, 2013.

*[signature]*
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

---

[5] As the matter must be remanded for further consideration of the medical evidence, the court declines to address plaintiff's additional arguments.

11